## THE CITY OF AURORA

*v.*

## JACKSON REED *et al.*

| 57 | 29 |
|---|---|
| 22a | 151 |
| 57 | 29 |
| 29a | 122 |
| 57 | 29 |
| 145 | 29 |
| 57 | 29 |
| 212 | ³411 |

1. PLEADINGS—*evidence—variance.* Where the declaration in an action against a city for having so graded a street as to cause water to run therefrom into plaintiff's building averred that water from the street ran into plaintiff's building, and the evidence showed the water ran from the street over a space of a few feet before entering the building, there was no variance.

2. STREETS—*grade—repairs.* A city has full control over the grade of its streets, and may adopt such angle as the authorities may choose, and may lower or elevate it, at will, and the owners of lots adjacent to the street can not call it to account for errors of judgment in fixing the grade, or recover damages for inconvenience or expenses produced in adjusting the level of their premises with the street. But a city has no more power over its streets than a private person has over his own land, and the city, under the plea of public convenience, can not be allowed to exercise that dominion, to the injury of the property of another, in a mode that would render an individual liable to damages, without itself becoming responsible, The rule of law which protects the right of property of one individual against another individual, must protect it from similar aggressions on the part of municipal corporations.

3. If a city, in fixing the grade of a street, turns a stream of water and mud on the grounds or cellar of a citizen, or creates in his neighborhood a stagnant pond that generates disease, it becomes liable to respond in damages.

4. CITY—*liable for damages for improper grade.* Where the city, through its proper officer, fixes the grade of a street, and property owners improve the street under the direction of the officer, and the improvement of the street is so made that water from rains and melting snow runs to and discharges itself over a lot owned by an individual, the city is liable for damages. The city has no right to turn surface water on private property, nor does it change the principle that the street was improved before the lot was. Nor does it change the liability of the city, by showing that other property owners on the street filled up a portion thereof in front of their lots, so as to turn the water on plaintiff's house. If the officials of a city permit persons to place obstructions in the streets, the city will be liable for injury resulting therefrom.

5. It is no defense to show that plaintiff might have dug ditches that would have protected his property; he was under no legal obligation to do so, and the city was. It was the duty of the city to provide proper sewerage to carry off such water. It is armed with ample power to provide proper means therefor; if necessary it could condemn ground for the construction of sewers, or use the streets therefor as far as practicable.

APPEAL from the Court of Common Pleas of the city of Aurora; the Hon. RICHARD G. MONTONY, Judge, presiding.

The opinion states the facts of the case.

Messrs. CANFIELD & NICHOLS, for the appellant.

Mr. C. J. METZNER, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case, brought against the city of Aurora by appellees, to recover for damages caused by surface water, which ran from an adjoining street into and upon the premises of appellees. Their building was situated on River street, which runs north and south near the west bank of Fox River. The street is occupied for business purposes, and the

buildings come to the line of the street on both sides. Before the buildings were erected, all the surface water from rain and snow, westward of this street, flowed to the river over these lots, much of it passing over the lot on which appellees' house is erected. There being a depression in the ground, inclining from the west towards the river, the erection of buildings on the west side of the street, which were from time to time built and filled the block, obstructed the natural flow of the 'water caused by rain and snow, and turned it into the cross streets running east and west, and leading into River street, thus largely increasing the volume that flowed along that street in front of appellees' premises.

It appears that in 1862, and while Dunning owned this lot, the property owners of the block entered into an arrangement with the city authorities, by which they were to put in a gutter in front of their property ; Dunning afterwards refused to carry out the arrangement, but the others constructed the gutter under the direction of the street commissioner. Dunning sold this lot in 1864 or 1865, to Smith, the lessor of appellees, who erected thereon the building occupied by appellees. This building obstructed the flow of water over the lot, as it had previously run. Appellees kept in the house a grocery store and eating house, the basement being used as a dining room. On at least three occasions, when heavy rains had fallen, the water ran into the basement of appellees' building, to the depth of from one to three feet. It occasioned some damage to their property, the loss of the use of the room some days, required labor and expense in removing the water, and some of their boarders left. The jury found a verdict in their favor for $56.81. A motion for a new trial was entered, but overruled by the court, and judgment entered upon it, and the case is brought to this court by appeal, and a reversal is asked, on several grounds.

It is first insisted, that the court below erred in refusing to exclude the evidence, because of a variance between it and the declaration. The first and second counts aver that the

city caused the street to be graded in so negligent and improper a manner "as to cause water from said street to run into said building." In the third count, it is averred that the city graded the street in a negligent manner, and failed to construct sewers and drains, by reason whereof when it rained the water "was forced into and flowed into said building and basement," so adjoining and abutting on the street. Thomson Reed testified, that no water came in under their side walk, but it came under the side walk in front of the lot next south of theirs, and struck the southwest corner of the building, and parted and went both ways; by which we understand that when it parted at the corner, a portion ran along the base of the building on the south side, and a part along the base in front; that this water entered the building both from the west and south sides.

It will be observed, that this water came from the street, and it is alleged that the defective grading caused it to leave the street and flow into the building. Now, it is apparent that if the grading was so made as to turn the water from the street, and it struck, in its course, the house, and a portion following along its base on the south side and several feet from the street, still it flowed from the street into the house, or was forced by its own gravity from the street into the building.

The declaration does not state that the water ran directly from the street into the house, without passing over any intervening space, but that water from the street ran into the building. If the evidence is true, it proves the averment that the water from the street ran into the building. If there is any variance, it is so extremely slight that we are unable to perceive it. There was no variance requiring the exclusion of the evidence from the consideration of the jury. The third, fourth and fifth of appellant's instructions were based upon the same idea, that there was a variance, and for the reason that the evidence was admissible, they were properly refused.

In the case of *Nevins* v. *The City of Peoria*, 41 Ill. 502, it was held, that a city has full control over the grade of its

streets, and can make them on such angle as they choose, and may lower or elevate them at pleasure, and the owners of lots adjacent to the streets can not call it to account for errors of judgment in these particulars, or recover damages because they incur inconvenience or expense in adjusting the level of their premises to that of the street, for purposes of ingress and egress. But a city has no more power over its streets than a private individual has over his own land, and the city, under the plea of public convenience, can not be permitted to exercise that dominion to the injury of the property of another, in a mode that would render an individual liable to damages, without itself becoming responsible. The same rule of law which protects the right of property in an individual against invasion from another individual, must protect it from similar aggressions on the part of municipal corporations.

If, in fixing the grade of a street, a city turns a stream of mud and water upon the grounds and into the cellar of one of its citizens, or creates in his neighborhood a stagnant pond that generates disease in his family, it becomes liable to respond in damages. This case was followed by the case of *The City of Aurora* v. *Gillett* 56 Ill. 132, which announces the same rule.

In this case, it appears that the city had, through the proper officer, fixed the grade some years previous to the time when the injury complained of occurred. It is true, the property owners improved the street, but it was under the direction of the officer. And the evidence tends to show that it was so done that the water which fell in rains, and from melting snows, run from both north and south of the premises occupied by the appellees, and discharged itself over the lot on which this building was erected and one which adjoined it. The city had no right to turn this surface water upon this or any other lot. In a state of nature it was not, so far as we can see, accustomed to convey all the water which accumulated in the street to its outlet into the river. The city had no right to render this lot worthless, and thus deprive the owner

3—57TH ILL.

34          CITY OF AURORA *v.* REED   *et al.*     [Sept. T.,

Opinion of the Court.

of its use, without making full compensation for the injury done. Nor does it change the principle, that the improvement of the street was made before the house was erected. The owner had the undoubted right to improve and occupy his lot, and if the city had turned the water upon it, they should have taken the necessary steps to remedy the wrong they had done, in so grading the street as to cause the water to flow over this lot.

Nor can it change the liability of the city, by showing that others filled up a portion of the street in front of their property, so as to turn the water upon this property. The improvement of the streets is in charge of the city, and is entirely under its control, and it is the duty of the city officials to prevent obstructions from being placed in the streets, and, neglecting that duty, the city must be held liable for the damages resulting therefrom. Nor is it a defense to show that appellees might have dug ditches or made other improvements that would have protected their property from loss. It is enough to say that they were under no legal obligation to perform a duty which devolved upon the city. The adjoining lot did not belong to them, and they had no legal right to construct a sewer over another man's property, or to turn the water on his lot. It was the duty of the city to provide suitable and proper sewerage to carry off water that accumulated in this and other streets. It is armed with the necessary power to provide the means, and if need be to condemn the ground required for sewers, or to use the streets for the purpose when practicable. We fail to perceive that any defense is shown to a recovery in this case.

This disposes of the questions raised on the refusal of the court to give a portion of appellant's instructions; and the instructions given for the city were certainly as favorable, if not more so, than it had the right to ask.

The judgment of the court below is affirmed.

*Judgment affirmed.*