# CITY OF CHAMPAIGN
## V.
# URSULA FORRESTER.

*Municipal Corporations—Nuisance—Improper Use of Sewer—Ordinance—Resolution—Evidence—Instructions.*

1. In an action against a municipal corporation to recover damages caused by the improper use of a sewer having its outlet through a ditch in the street in front of the plaintiff's premises, it is *held:* That the court below properly admitted a certified copy of a resolution of the city council authorizing such use in violation of an ordinance, as evidence to show that the city knowingly permitted and assented to such violation of the ordinance; that the defendant is liable for permitting and authorizing such im-

proper use of the sewer ; and that there was no error in giving and refusing instructions.

2.  A municipal corporation is liable to the head of a family for damages caused by an improper use of a sewer in violation of an ordinance, which it not only permits but authorizes.

[Opinion filed September 21, 1888.]

APPEAL from the Circuit Court of Champaign County ; the Hon. J. F. HUGHES, Judge, presiding.

Mr. E. L. SWEET, for appellant.

Messrs. RAY & SLAUSON, for appellee.

WALL, P. J.   The declaration alleged in substance that the city had control of a certain sewer which was constructed solely for the purpose of carrying water from certain streets, and that it was its corporate duty to so control and manage the sewer as to inflict no injury upon the plaintiff, yet that the city did knowingly authorize and permit divers persons and owners of property adjacent to said sewer and to other sewers emptying therein, to connect therewith and drain into it divers privies and cess-pools, in violation of the ordinances of the city, whereby filth was carried into an open ditch in the street in front of the premises owned by the plaintiff and occupied as a dwelling house, causing the air to become laden with foul odors, and producing annoyance, discomfort and injury to plaintiff and her family, and rendering the premises unwholesome and unfit for occupancy.   The plea was not guilty.   The case was tried by jury and there was a verdict for plaintiff, assessing damages at $425.   From the judgment entered upon this verdict an appeal is prosecuted to this court.

It is urged that the court erred in admitting in evidence a certified copy of a resolution of the city council permitting the " Carter House, " a hotel, to connect its privy and cess-pool with the sewer.   It is argued that the city is not liable for a failure to prosecute those who violate its ordinances,

and that it could not by a mere resolution give legal authority to violate the ordinance which prohibited making such a connection with the sewer, nor could it repeal the ordinance by such means.

It is not necessary to assume that the resolution had such effect in order to make it competent.

It was clearly admissible for the purpose of proving the allegation that the city knowingly permitted its ordinance to be thus violated. The resolution proved this and also that the city co-operated with the offender; and by other proof it appeared that it received a consideration of $50 for the permission. Grant that the ordinance was not repealed, still it is shown by this resolution that the city consented to its violation.

"A resolution is an order of the council of a special and temporary character; an ordinance prescribes a permanent rule of conduct or government." Dill., Mun. Corp., Vol. 1, Sec. 244, note.

This was an official act of the city of a formal character, properly provable under the issues and strongly tending to make out a material allegation contained in the declaration. It was competent evidence.

It is further objected that the court erred in an instruction for the plaintiff as follows:

"The court instructs the jury that if they believe from the evidence that the city of Champaign constructed the sewer in the street called Walnut street, and the open ditch into which it emptied, and had the control and management thereof, and that the aldermen and city council of said city knew that the said sewer and open ditch into which it emptied, mentioned in the evidence, were filthy and offensive, and knew that persons were draining privies into the same, and permitted the same to continue up to the time this suit was commenced, and that offensive matter from said sewers and privies was deposited in the street adjacent to plaintiff's residence, and that odors arose from said offensive matter in said sewer and ditch into which it emptied and entered the dwelling of the plaintiff and rendered the same unhealthy, uncomfortable and

offensive, and made the plaintiff's house disagreeable and un-
healthy to live in, as alleged in plaintiff's declaration, then the
plaintiff is entitled to recover such damages as the jury may
find from the evidence will compensate her for such injury,
if any, to herself and family, by reason of such offensive
odors."

It is argued that this instruction does not confine the jury
to the consideration of damages caused by the connection with
the Carter House. No reason is suggested why the jury
should be so confined. There was proof of other instances
where the city had, not by resolution, knowingly permitted,
if not expressly authorized, such connections, and the evidence
was sufficient to predicate the instruction in this respect. It
is said that it is objectionable because it asserts in effect an
absolute duty on the part of the city to prevent the bad odors
arising from the ditch which annoyed the plaintiff.

We see no objection in this regard. We think, upon the
facts assumed, there was liability, and that is all the instruc-
tion asserts.

The further objection is made that it instructs the jury to
give damages for injuries to the plaintiff's family. It author-
izes the jury to give the plaintiff "such damages as will com-
pensate her for such injury, if any, to herself and family, by
reason of such offensive odors." It is apparent that the head
of a family, a householder, is damaged by anything which
renders his habitation uncomfortable and unwholesome to
himself or his family. It can not be denied that the discom-
fort and ill health produced by such a cause as here alleged
may be an injury, not only to every person affected, but espe-
cially so to the head of the family, the householder; and, when
carefully considered, this is all the instruction affirms upon this
point. Possibly the jury, on a careless reading, might give it
the construction contended for; and if defendant was appre-
hensive that the jury might so misunderstand, it was its
privilege to ask another instruction making the point clear.

From the verdict we are satisfied there was no misunder-
standing. The amount allowed was certainly warranted by
the evidence, and if the instructions were justly subject to the

complaint made we should hardly feel disposed to consider it ground for reversal.

The further point is urged that the court erred in refusing the second instruction asked by the defendant. That instruction is as follows:

"The court instructs the jury that the city council of the city of Champaign has not the power to authorize any one to violate any ordinance of said city; that all persons must take notice of this fact, and that any attempt on the part of the city council, if any such is shown, to authorize any person or persons to empty any privy or cesspool into the sewer in question, is absolutely null and void, and does not make the city responsible for any injury occasioned by such privy or cesspool being emptied into said sewer."

The point here made is, in effect, the same as that presented in the objection to the resolution of the council above referred to, extending to all cases where, by any means, the city had permitted the ordinance to be violated. The proposition assumed by this instruction goes to the foundation of the plaintiff's case. We regard it as essentially unsound.

True, as suggested, a city is ordinarily not liable for omitting to prosecute those who violate its ordinances, but the case supposed goes much further. An act is permitted and authorized which not merely violates an ordinance but perverts a sewer to an improper use and inflicts directly an injury upon the plaintiff.

The case is, in effect, the same as though a street or sidewalk were suffered to become unsafe from unlawful or improper use, or from any cause, and damage ensues, in which case the city is held liable if it had notice, or if the circumstances were such that notice would be presumed. Here is a defective condition authorized by the city, and it can be no defense that the supposed authority was, in a legal sense, invalid. It can not be urged as a defense that the corporate act complained of was itself insufficient or in violation of law. The case for the plaintiff does not imply that the authority under which the sewer was tapped was valid. The law is invariably broken when actionable tort is committed. "A

municipal corporation is liable to indictment for a public nuisance maintained by it, and is also liable for damages at the suit of an individual who sustains special damages therefrom. * * * If it allows its streets to remain out of repair, or if it neglects to abate nuisances injurious to the health of its citizens which it has the power to remove, or if it permits any public nuisance to exist upon its property, it may be indicted and punished the same as an individual. * * * When a municipal corporation has ample power to remove a nuisance that is injurious to the health, endangers the safety or impairs the convenience of its citizens, or when, in the prosecution of a public work, it creates a nuisance, it is liable for all the injuries that result from a failure on its part to exercise the power possessed by it, and for the injuries resulting from its wrongful acts." Wood on Nuisances, Secs. 743 and 744; Nevins v. City of Peoria, 41 Ill. 502; City of Aurora v. Reed, 57 Ill. 29; City of Jacksonville v. Lambert, 62 Ill. 521.

No other objections are urged in the brief.

We are satisfied that the evidence fully sustains the case alleged in the declaration and that the judgment should be affirmed.

*Judgment affirmed.*