# J. C. CLUNEY *v.* LEE WAI.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED MARCH 24, 1896.          DECIDED JUNE 13, 1896.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE PERRY, IN PLACE OF FREAR, J., DISQUALIFIED.

A person seeking to enjoin a nuisance is not required to show that the neighborhood of his residence was, until the establishment of the nuisance, a resident district undisturbed by noisy trades and businesses.

A right to such injunction may be defeated if it be shown that the neighborhood has been for many years so wholly devoted to noisy trades and businesses that the addition of one more such would not sensibly add to the discomfort of the complainant. This was not the character of the neighborhood in question.

The trial court not having made any findings as to which instruments used in the orchestra of a Chinese theatre produce noise that is a nuisance, or during what hours the noise produced by such instruments disturbs complainant's sleep, the case is remitted to the Circuit Court for a hearing upon these questions.

OPINION OF THE COURT BY JUDD, C.J.

A bill for an injunction was filed by plaintiff in August last, to prevent the erection by defendant of a building to be used as a Chinese theatre. A preliminary injunction was denied, a demurrer overruled, and a hearing of the merits was had in October. The Circuit Judge dismissed the bill and an appeal was taken by plaintiff to this court. A synopsis of the bill is as follows:

1. That plaintiff is the owner of certain premises in Honolulu

situate on King street on the hill on the Ewa side of Nuuanu stream, which premises are occupied as a residence.

2.   That for many years past the locality in which the plaintiff's said residence is situate, has been a residence district undisturbed by noisy trades and businesses.

3.   That plaintiff is informed and believes that Lee Wai, of said Honolulu, the defendant hereto, is about to and is now preparing to build, in close proximity to plaintiff's said residence, a house to be operated and used as a Chinese theatre.

4.   That the performances carried on in such theatres as that proposed and now about to be built and operated by the said Lee Wai consists very largely of pounding on gongs and drums, blowing upon various wind instruments and performing upon various stringed instruments, the names of which are unknown to the plaintiff, but which produce harsh, strident and discordant tones of great volume and continuity.

5.   That the time and times during which such performances are usually enacted is between twilight in the evening and midnight.

6.   That the volume, discordance and continuity of the noise so produced at such performances is so great that it will be distinctly heard upon plaintiff's said premises, and will render sleep and the peace and enjoyment of life upon plaintiff's said premises, to which he is lawfully entitled, an impossibility while the same continues.

7.   That if the said defendant is allowed to so erect a theater and conduct performances therein as aforesaid, it will cause irreparable injury to plaintiff and to his rights as the owner and occupier of said premises as aforesaid, by destroying his peace and quiet and injuring the value of his said premises.

The Circuit Judge found that the evidence, which consisted mainly of depositions of some sixteen persons residing in the locality, that the allegation in the bill as to the nuisance was "overwhelming in its force and sufficiency, and stands uncontradicted," and that the plaintiff, who resides under similar circumstances with the deponents, would be subject to the same

annoyance, but denied the injunction because the plaintiff had failed to sustain the allegation that his residence is situated in a locality undisturbed by noisy trades and businesses. The Judge remarked that "recognizing the fact that we are a cosmopolitan community, to say that what is positive pleasure and enjoyment to one portion of the populace should be decreed a nuisance *per se* to the other would be going too far without very satisfactory proof that heretofore the location in which the plaintiff resides had been free from such disturbances as he now complains of."

We do not understand that any such burden rests upon a party seeking to enjoin a nuisance. Persons may complain of a nuisance even if they erect their dwellings where they may be affected by a nuisance already existing. An offensive trade or business may be established and carried on at a point so remote from others as in no way to disturb others, and be lawful, but it may become unlawful whenever the adjacent owners devote their property to purposes of business or residence as to render the continuance of the objectionable trade incompatible with such purposes. *Taylor v. People,* 6 Parker's Crim. Cases p. 353.

The contrary principle that a person is remediless if he comes to a nuisance is supposed erroneously to be derived from remarks of Abbott, C.J., in *Rex v. Cross,* 2 Car. & Payne 226, and is not sustained by authority. "It used to be thought that if a man knew there was a nuisance, and went and lived near it, he could not recover, because it was said, it is he that goes to the nuisance, and not the nuisance to him. That, however, is not the law now." 2 Addison on Torts, Sec. 367, citing *Hole v. Barlow,* 4 C. B. N. S. 336. "There is no such thing as a prescriptive right or any other right to maintain a public nuisance." *Mills v. Hall et al.,* 9 Wend. 315. In *Commonwealth v. Upton,* 6 Gray 473, the court held that "carrying on a trade for twenty years in a place remote from buildings and public roads does not entitle the owner to continue in the same place after houses have been built and roads laid out in the neighborhood, to the occupants of and travelers upon it is a nuisance." The reason for this rule is that the use and enjoy-

ment of his land by a person must have reference to the rights of others and be subordinate to general laws which are established for the benefit of all. "It is only when a neighborhood has been for years so wholly given up to establishments devoted to noxious or disagreeable trades that the addition of one or more will not add sensibly to the discomfort of a complainant that his right to an injunction will be defeated."

*Cleveland v. Citizens' Gas Light Co.*, 20 N. J. Eq. 201.

In Chap. 20 of Wood on Nuisances the learned author maintains with vigor the proposition that though there can be no prescription for a *public* nuisance, there can be one for a *private* nuisance. The case before us does not call for a ruling upon this question, for when the bill was filed the alleged nuisance was merely prospective, the theatre being in process of erection, and there is no pretense that the other Chinese theatre in that neighborhood had been in existence for twenty years.

But is the neighborhood wholly devoted to Chinese theatres producing noises like those complained of? The proofs are that for many years a Chinese theatre was in operation on King street, west of the bridge over Nuuanu stream. This was 830 feet distant from plaintiff's residence, and it was established there before plaintiff made his residence there, but it had been removed when plaintiff's bill was filed. Performances in the next Chinese theatre built in the neighborhood were begun in January, 1895. It is 725 feet from plaintiff's residence. The proposed theatre was begun in August of that year, and is nearer still to plaintiff's residence, its rear being 510 feet from it, as appears by the survey in evidence.

Upon this showing we cannot say that the neighborhood is so wholly devoted to noises of the character complained of that the addition of one or more Chinese theatres with its orchestra would not sensibly add to the annoyance and discomfort of the plaintiff. The fact, if it be a fact, that the plaintiff did not complain of the orchestra of the Chinese theatre 725 feet from him is nothing against his complaining of the one 510 feet from him.

That noise alone may be the subject in equity for an injunction is unquestioned. Wood, Nuisances, Sec. 611.

Pending the appeal, we understand that the defendant, being unrestrained by injunction, has completed his theatre and that it is in operation, presumably with an orchestra of the character alleged, which we find from the testimony of competent witnesses to be indispensable to the performance of Chinese military dramas. We have no doubt that the loud and discordant noises produced by some of the instruments used, though pleasing to Chinese audiences who gather there (not necessarily all residents in the locality), are annoying and disturbing to the plaintiff and the neighborhood in general at night, during the hours generally devoted to sleep and quiet.

We are not authorized to compel the removal of defendant's building itself, for it is not objectionable as a structure, nor will we enjoin the performing of Chinese or other theatrical or operatic performances in the said structure, for of themselves they distrub no one; nor can we enjoin musical accompaniments if not so "loud, harsh, strident and continuous" as to be a nuisance. The plaintiff has shown by the affidavits of a large number of credible persons living within the acoustic sphere of the noise of instruments used by the orchestra of a Chinese theatre that such noise would seriously interfere with their sleep and quiet. But there is no exact testimony showing what particular instruments used in such an orchestra produce the offensive noises. We do not feel warranted to enjoin the use of all and every kind of Chinese musical instruments, but only of such whose noise would disturb the complainant in the enjoyment of his quiet and rest. Nor, considering the evidence in this case, are we willing to enjoin the reasonable use of even a full Chinese orchestra with its objectionable instruments, at such hours of the day or night wherein the noise so made would not disturb the quiet and rest of the complainant, remembering that the complainant alleges in his bill that the time in which the Chinese orchestras play is between twilight and midnight.

The evidence shows that the noise produced by the instru-

ments out of which come "harsh, strident and discordant tones" annoys and disturbs complainant only to this extent, to-wit, in that, being produced at unseasonable hours, it seriously interferes with his sleep, or rather attempt to get sleep. In other words, complainant has failed to prove affirmatively that the aforesaid noise is such as to annoy or inconvenience him at any time other than that devoted by him to sleep; and, consequently, further inquiry in the Circuit Court should be limited, on this branch of the case, to the question of what are the hours within which the production of said noise should be enjoined by reason of its interference with complainant's sleep.

We think that an injunction ought to issue enjoining the use of said objectionable instruments during the hours within which the noise produced by them interferes with complainant's sleep. The case is remitted to the Circuit Court of the First Circuit for a finding upon these two questions, to-wit: As to what are the objectionable instruments, and what are the hours within which their use should be enjoined.

*L. A. Thurston* and *A. G. M. Robertson*, for plaintiff.

*Hartwell & Stanley,* for defendant.