# ELISA T. CABRAL *v.* THE CITY AND COUNTY OF HONOLULU.

## Nos. 2080 and 2081.

Argued October 5, 1933.    Decided November 8, 1933.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is an action for damages caused to dwelling houses and other property, the allegation being that the negligence of the defendant was the proximate cause of the damage. The main allegations of the declaration are as follows: That on November 18, 1930, and for many years prior thereto the defendant maintained a culvert over Waolani Stream at Wyllie Street; that in 1911 the defendant installed a large drain carrying storm waters from Nuuanu Street and in 1924 a second drain carrying flood waters from Alewa Heights, each emptying into the Waolani Stream above the culvert on Wyllie Street and at right angles to the ordinary flow of the stream; that in repeated instances of heavy rainfall prior to 1930, it was demonstrated that the culvert at Wyllie Street was inadequate to carry the storm waters of the stream and that this inadequacy was well known to the defendant; that the defendant's attention was repeatedly called to the inadequacy of the culvert but that it was not until after November 18, 1930, that a sufficient bridge was erected at the point referred to; that on November 18, 1930, after a heavy rainfall the waters of Waolani Stream, augmented by the waters of the two sewers, overflowed the culvert and rose to a height of about two and one-half feet above the level of Wyllie Street, backed up and flooded the premises of the plaintiff and of other abutting owners, carried away and demolished two houses belonging to the plaintiff and caused injury to houses and other property of other abutting owners in the vicinity.

In the first count damages are asked for the destruc-

tion of the plaintiff's dwellings and other property. In the second, third, fourth, fifth, sixth and seventh counts damages are asked for injury caused to dwellings and other property of other abutting owners whose claims were assigned to the plaintiff. The answer was a general denial. The case was tried without a jury. The court made the following findings, *inter alia*: That owing to construction of the drains from Alewa Heights and from Nuuanu Street and to the development of the surrounding country the flow of the stream "has been considerably increased, both as to amount and rapidity during the past twenty or thirty years so that from about 1921 up to November 18, 1930, the culvert in question has been insufficient to carry off the flood waters" of the stream "during the heavy rains"; that the result has been that during heavy rains the culvert has "operated as a dam causing the water" of the stream "to back up and form an artificial lake, flooding the property" of the claimants along the bank of the stream; that during floods the waters of the stream "sometimes washed over the culvert or bridge and were somewhat diverted by the same and by a concrete wall on the top of the culvert so that they flowed into and flooded the property of Soper" (one of the claimants), "below the culvert"; that in 1927, during a heavy rain storm, the culvert impounded the waters of the stream and caused them to flood the premises and property "of the householders living along the bank of the stream as well as the Soper premises below the culvert"; that the defendant was notified of this flood and of the damage done and was requested to "remedy the situation"; that the defendant "failed to do anything with regard to remedying this situation and continued to maintain the culvert, giving as an excuse therefor that the property owners objected to a proposed plan to deepen the stream bed"; that "on November 18, 1930, an un-

usually heavy rain occurred in the watershed" of the stream, causing another flood, in which "the culvert again acted as a dam and backed up the water behind it, flooding and damaging the property of the residents as before, including also the Soper property below the culvert"; that "the negligent maintenance of this culvert by the defendant was the proximate cause or a proximate cause of the injury and damage"; that the waters of the stream were impounded and caused to back up to such an extent that they lifted the plaintiff's houses and floated them down the stream for some distance, "thus practically destroying these two houses"; that "the evidence clearly shows that although this flood of November 18, 1930, was unusual or extraordinary it was not so unusual or so extraordinary that it could not have been anticipated that such a flood would occasionally occur" and that "such unusual or extraordinary floods have and do occasionally occur after intervals of irregular duration"; that with the exception of Blake who is named in the third count "the claimants were not guilty of negligence or contributory negligence or assumption of risk so as to defeat their claims and that they acted with reasonable care and prudence."

The court found in favor of the plaintiff, in amounts stated, upon all of the claims except those declared upon in the third and fourth counts. It disallowed the claim in the fourth count on behalf of one Ketcheson on the ground that no written statement of claim had been filed with the mayor and the board of supervisors within six months of the date of injury and disallowed that of Blake, in the third count, on the ground that he was guilty of contributory negligence in maintaining his house too near the ordinary flow of the stream for safety. In this latter respect the findings of the court were that "this house * * * was built almost on the channel of the stream and

very close to the mauka face of the culvert. No person of ordinary prudence and intelligence would have constructed this house in such a dangerous position, about 6 feet below the level of Wyllie Street, and having done so must be deemed to have assumed any risk from floods; * * * that Blake bought this house with full knowledge of the entire situation and he therefore stands in the shoes of the original owner" and cannot recover; that the original owner, from whom Blake purchased the house, was guilty of negligence in building it at the point where it stood and that Blake was likewise guilty of negligence in maintaining it at that place; "that in all probability if it had not been for the culvert in question the injury to Blake's residence * * * would have been much more severe owing to the fact that the culvert impeded the speed of the waters of the stream."

Both parties sued out writs of error, the defendant claiming that no judgment whatever should have been awarded against it and the plaintiff claiming that she should have recovered on behalf of Blake and Ketcheson and to a greater extent in her own behalf.

Undisputed evidence showed that the culvert in question was constructed in or about the year 1900, by the Territory of Hawaii, and that until some time after November, 1930, it was maintained by the defendant substantially without change. Its semicircular opening for the passage of water was sixteen feet in diameter and nine feet high or a total area or face of the opening of one hundred fourteen square feet. The solid masonry surrounding that opening and supporting the bridge presented to the stream a face of twelve hundred square feet. The drain from Alewa Heights, constructed about the year 1921, was forty-two inches in diameter and that from Nuuanu Street, installed in 1924, was twenty-seven inches in diameter. Both were made to empty into the

stream at right angles thereto and immediately above the culvert.

On November 18, 1930, there was a very heavy rainfall in the watershed of the Waolani Stream as well as elsewhere and the resulting freshet caused the destruction and injury complained of. The values of the different items of property destroyed, as found by the trial court, are not now questioned, with the one exception hereinafter stated. In this court the main reliance of the defendant is upon the contention that the rain storm was of such intensity and the freshet so unusual and extraordinary that it could not have been foreseen by the defendant or its agents that the culvert would be inadequate to permit the passage of the resulting waters and that therefore the damage must be regarded as the act of God and cannot be regarded as having resulted from any negligence on the part of the defendant. On behalf of the defendant testimony was received from a meteorologist as to the nature and the intensity of the rain storm and of the showing recorded by rain gauges on the same subject; and there was testimony from several civil engineers and other experts and also some non-expert testimony which, if believed, would have supported, it may be assumed, a finding to the ultimate effect that the storm was so extraordinary that it could not have been anticipated by man. On the other hand, however, there was an abundance of evidence, from at least five witnesses, non-experts though they were, which supported the findings made by the trial judge to the effect that while the storm was an unusual one it was not so unusual or so extraordinary that it could not have been foreseen. These five witnesses, some of them occupants and owners of the buildings destroyed, had all lived in the vicinity for many years, one of them, at least, as much as thirty years. They testified that within their knowledge and observation there had been

many storms and freshets in and near the Waolani Stream, producing such a flow of water that the culvert in question was inadequate to carry it off; that in several of these storms they had witnessed the backing up of the waters of the stream caused by the large area of the mauka masonry face of the wall of the culvert; that that wall had, in these instances, acted like a dam; that in December, 1927, there was a particularly heavy freshet which caused serious damage to the same buildings which were demolished or injured in the storm of November, 1930, and that immediately following that occurrence several of the persons owning property in the neighborhood had addressed a petition to the board of supervisors of the City and County of Honolulu, relating this experience of theirs and asking that the situation be remedied. In that petition the attention of the board and its officers was called to the inadequacy of the culvert. That petition alone was weighty evidence of the fact that man could foresee and did foresee that a storm of the magnitude of that of December, 1927, and of course of heavier ones, would cause serious damage to the property owners in the vicinity of the culvert, owing to the inadequacy of the culvert.

The findings of the trial court in these respects cannot be set aside. There was not only substantial evidence but an abundance of evidence to support them. The relative weight to be given, on the one hand, to the testimony of the claimants and of other neighbors who had actually seen the various floods and, on the other hand, to the testimony of the expert witnesses who had not witnessed the actions of former floods, was for the trial court alone to consider and to determine. Under his findings the defense that the damage was the act of God cannot be sustained.

The defense that the maintenance of the culvert by

the defendant was in the exercise of a purely governmental function and that the defendant was therefore not liable for injuries resulting from negligence in the maintenance of the culvert cannot be sustained. In *Reinhardt v. County of Maui*, 23 Haw. 102, the action was for negligence for failure to rebuild or repair a culvert (in a public highway) which had been washed away and destroyed. This court, referring to *Matsumura v. County of Hawaii*, 19 Haw. 18 and 496, and *Halawa Plantation v. County of Hawaii*, 22 Haw. 753, said, at page 106, that "those cases are to be regarded as having established in this jurisdiction the rule that the liability of counties with respect to the repair and, therefore, the non-repair of highways is governed by the law applicable to municipal corporations, and that counties do not enjoy the immunity accorded to quasi-corporations"; and that there is no difference in principle between the two earlier cases in which the injuries were caused to private property by the negligence of the employees of the county in making repairs to a highway and the case then at bar in which the alleged negligence consisted in a failure to keep the highway in a reasonably safe condition (p. 105). So, also, there is no difference in principle between the failure to erect a new culvert in place of one that has been washed away and the failure to erect a new culvert or bridge in place of one that has proven inadequate. If in the one instance of nonfeasance the county is liable, so also, it must be liable in the other instance of nonfeasance.

The trial court correctly ruled that the claim on behalf of Ketcheson could not be allowed. Section 1833, R. L. 1925, provides that "before the city and county shall be liable for damages to any person for injuries to person or property received * * * on account of any negligence of any official or employee of such city and county, the person so injured * * * or someone in his behalf, shall,

within six months after receiving such injuries, give the mayor notice in writing of such injuries, and the specific damages resulting, stating fully in such notice, when, where and how the injuries occurred, the extent thereof and the amount claimed therefor." That the giving of such a notice is an essential prerequisite to the existence of a right of action is settled in the case of *Rogers* v. *City and County, ante* p. 722. It is admitted that no such notice was given in Ketcheson's case.

The trial court found and it is not disputed that Blake's house was within a very few feet of the ordinary flow of the stream, very close to the culvert and at a point where the land is several feet lower than the top of the culvert. It found that "in all probability if it had not been for the culvert in question the injury to Blake's residence * * * would have been much more severe owing to the fact that the culvert impeded the speed of the waters of the stream." This, necessarily, is the equivalent of a finding that neither the nature nor the presence of the culvert was instrumental in causing the damage and that the injury to the house would have occurred even without any culvert at that point. There was ample evidence to support this finding. Under these circumstances the conclusion follows that the loss in this instance was caused not by the negligence of the defendant but by the negligence of the claimant.

It is also claimed on behalf of the defendant that the claimants, other than Blake, in erecting and maintaining their houses in the places in which they were at the time of the injury, were guilty of negligence and assumed the risk of just such damage as occurred in November, 1930. The finding of the trial court, amply supported by the evidence, was that if the culvert had been adequate to carry off freshet waters the injury complained of would not have occurred. Assuming that these claimants (other

than Blake) knew, as they doubtless did, when they erected or purchased their houses that because of the inadequacy of the culvert injury was likely to occur to buildings standing at those points, nevertheless the burden of the loss cannot in law be placed upon them. They had a right to rely upon the view that the defendant would remedy the defects in the structure across the stream at Wyllie Street, as by substituting therefor an adequate bridge. The culvert was in the nature of a nuisance and the fact that the claimants (other than Blake) came to the nuisance would not debar them from a recovery for damage caused by its continuing existence. "Persons may complain of a nuisance even if they erect their dwellings where they may be affected by a nuisance already existing. An offensive trade or business may be established and carried on at a point so remote from others as in no way to disturb others, and be lawful, but it may become unlawful whenever the adjacent owners devote their property to purposes of business or residence as to render the continuance of the objectionable trade incompatible with such purposes. * * * 'It used to be thought that if a man knew there was a nuisance, and went and lived near it, he could not recover, because it was said, it is he that goes to the nuisance, and not the nuisance to him. That, however, is not the law now.' * * * 'There is no such thing as a prescriptive right or any other right to maintain a public nuisance.'" *Cluney* v. *Lee Wai*, 10 Haw. 319, 321. The same principle applies in the case at bar. A right to the continued maintenance of the inadequate culvert was not acquired by the defendant to the detriment of the property rights of those who owned land above the culvert. The way originally provided by nature at Wyllie Street for the passage of freshet or flood waters was adequate for the purpose. To hold that the defendant could, without liability to the property owners, erect or maintain

at that point a culvert so inadequate as to necessarily cause damage to property owners in times of freshets and thus effectually prevent them from using their property in a way that would have been safe and lawful prior to the erection of the culvert, would be in its essence to deprive the owners of the right to use their property without compensating them therefor. This would contravene the principle that private property cannot be taken for public use without just compensation.

The plaintiff assigns as error that the trial court limited her damages. for the loss of use of her houses to the period of one month immediately following the demolition of the buildings, her claim being that she was entitled to recover at $75 per month for the loss of use of the buildings from the date of the flood to December, 1931, when a new and adequate bridge was built in place of the inadequate structure. But the plaintiff, having been awarded full compensation for the value of the houses, cannot recover in addition for the loss of rents. The position is as though the defendant had purchased the two houses from her on November 18, 1930. The award of $3,300 in the plaintiff's favor is the equivalent of an adjudication that the defendant should have paid her that sum of money on November 18, 1930. It may be that she was entitled to recover interest by way of damages for failure of the defendant to pay her the $3,300 on November 18, 1930. She did not, however, claim interest in her declaration, did not present to the trial judge any claim for interest, was not denied interest and does not assign in this court as error any failure of the trial court to award interest. The defendant, on the other hand, has not assigned as error the award which was made in favor of the plaintiff of $75 for one month's loss of use of the buildings. Under these circumstances the judgment for $75 must stand. Only possible errors which have been

assigned can be considered.

The judgment under review is affirmed.

*L. P. Scott,* Deputy City and County Attorney (also on the briefs), for plaintiff in error.

*J. G. Anthony* (*Robertson & Castle* on the brief) for defendant in error.