# F. KOEHNEN, LTD. *v.* COUNTY OF HAWAII.

## No. 4248.

DECEMBER 27, 1963.

TSUKIYAMA, C. J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY CASSIDY, J.

In June of 1957 plaintiff, F. Koehnen, Ltd., purchased the building facing Kamehameha Avenue between Waianuenue Street and Shipman Street, in Hilo, from American Factors, Ltd. Extensive renovations were planned and undertaken and the company was scheduled to move into the building in time to open for trade on September 6. By August 30 it had moved some of its merchandise into the basement of the building. The goods were stored

directly on the floor. Hilo, and particularly its Amauulu section, had very heavy rainfall in the late afternoon and early evening of that day. Runoff from the rain accumulated on Kamehameha Avenue in the vicinity of its intersection with Shipman Street and formed a lake which eventually backed up over the 8-inch curb onto the sidewalk in front of the Koehnen Building causing water to flow into the basement of the building through several openings in the sidewalk as well as through an opening made by the renovating contractor, S. K. Oda, Ltd., for the installation of a ramp to the basement. One of the employees of a tenant in the building testified that when he left the premises at about 5:00 p.m. on the day in question it was raining heavily and water was flowing in the street but there appeared nothing to be alarmed about. When he returned at about 6:15 p.m. water covered the sidewalk to a depth of 6 inches. A co-worker who returned to the building about the same time testified he entered the basement to find furniture and other merchandise floating on or covered by muddy water which contained cane trash. The water filled the basement to a height of more than 3 feet.

In the plaintiff's action against the county for the damages caused to the goods stored in the basement, the county filed a third-party complaint against the contractor alleging that the contractor negligently failed to fill a hole it had made in the sidewalk, that by such negligence surface water was permitted to flow into the basement, and that plaintiff's losses were caused by the negligence of the contractor and not that of the defendant. After a jury waived trial the court dismissed the third-party complaint and found the county liable for the consequences of the flooding of plantiff's building. The court's decision concluded with the following findings:

"I find from the evidence that the County of Ha-

waii diverted the natural flow of surface water by the construction of the bridges, and have negligently maintained inadequate drains on both the upper and lower Wailuku Bridges; that the diversion of surface water and the negligent maintenance of the inadequate drains were the proximate cause of the damages suffered by the Plaintiff."

The parties had stipulated that the amount of damages caused to the merchandise stored in the basement was $3,936.14 and judgment was entered for plaintiff in that amount. On appeal from the judgment, the county contends that the evidence does not support the holding that it was responsible for the flooding of the building and the damages caused to plaintiff. It is further contended the trial court erred in ruling that plaintiff was not barred from recovery by reason of contributory negligence.

The plaintiff's building is located a very short block from Wailuku Drive, which follows the course of the Wailuku River on its southern bank. The river flows east into Hilo Bay just below the projection of Kamehameha Avenue in a northerly direction. The river is crossed by two bridges. The upper, Wainaku Bridge, is approximately 400 yards and the lower, Puueo Bridge, approximately 200 yards from the mouth of the river. Wainaku Street runs in a north-south direction on the Puueo (north) side of the river and it terminates at the upper bridge. Puueo Street parallels Wainaku Street and ends at the lower bridge. Keawe Street intersects Wailuku Drive opposite the Puna (south) end of the Puueo Bridge. Amauulu Road runs makai (east) into Wainaku Street about 600 feet from the river. The first 600 feet of Amauulu Road mauka (west) of Wainaku Street is county owned and paved. Beyond that point it is a private plantation road, topped with loose gravel, and runs through cane fields of Hilo Sugar Company.

The evidence shows and the trial court found that as a result of the rainstorm of August 30, 1957, surface water from the cane-field area of the Amauulu section of Hilo flowed in great volume down Amauulu Road, along Wainaku Street, across the Wainaku Bridge, into and down Wailuku Drive to Keawe Street, and then down Shipman Street to Kamehameha Avenue; also, that considerable surface water crossed the river over the Puueo Bridge and flowed down to Kamehameha Avenue, by way of Keawe and Shipman Streets and by way of Wailuku Drive. The drains on both bridges were clogged with cane trash and other debris.

Some surface water from the city proper also reached the area by way of Waianuenue Street. However, the evidence clearly bears out that the flow from the Amauulu-Puueo side of the river was much greater, and that, without the surface water which crossed the Wailuku River from that part of the city there would have been no overflow onto the sidewalk and into the basement of plaintiff's building from the pool that formed on Kamehameha Avenue.

The Wainaku Bridge was constructed in 1919. The present Puueo Bridge was reconstructed in 1938. No difficulty of the nature involved in this case appears to have been experienced until after 1928. There is testimony that several times after that year the basement of American Factors' Building was flooded. It does not appear whether the county was apprised of any of the earlier floodings. It is definitely established, however, that by at least 1950 officials of the county learned that the drains at the north end of the two bridges could not adequately handle surface flow during the very heavy rains that could be expected to occur every few years in the locality.[1] They also became

---

[1] On argument appellant conceded that the rainstorm of August 30, 1957, was not so unusual and extraordinary for the locality that it was not foreseeable.

fully aware that by reason of the inadequacy of the drains surface water from the north side of the river would flow across the bridges during such rains and that it was quite likely that some of it would end up in the basement of the building involved in this case.

As the result of heavy rainfall in the Amauulu-Puueo district on November 2, 1950, the basement of American Factors' Building was flooded. The next day the county's Board of Supervisors adopted a resolution instructing the county's Chief Engineer, John L. Padgett, to investigate the flooding of the building, and also directing "that complete study of flood waters in that area be made in order to relieve that situation." Two weeks later the engineer submitted his report reciting that the rainfall of the flash flood on November 2 was estimated at about 5 inches in an hour and a half. As far as pertinent, the engineer's recommendations resulting from his investigation and made "more or less in the order of priority" were that:

"* * *

"2. Two catch basins be installed on the Wainaku Bridge over the Wailuku River. Two catch basins be installed on the Puueo Street bridge across the Wailuku River.

"3. A 36″ culvert, and two catch basins to be installed at the intersection of Shipman Street and Kamehameha, including a 24″ culvert up Shipman Street to the intersection with Keawe Street area. Four Type A catch basins to be installed. This will relieve the flooding of American Factors basement, which incidentally did no damage.[2] * * *″"

---

[2] American Factors had adopted the practice of storing goods in its basement 14 to 18 inches above the ground on tables made by laying boards on wooden horses. The evidence is that on the occasion referred to in the engineer's report water rose to a height of about 12 inches in the basement.

The county installed the 36-inch culvert and the drains at the intersection of Shipman Street and Kamehameha Avenue, but did not follow the engineer's recommendation for the installation of the 24-inch culvert or of the new catch basins which were to have replaced the existing drains at the north end of the two bridges. These were to have been Type "A" catch basins which are constructed with a long open slot cut directly through the curb. The testimony is that the Type "A" drain would not clog and would permit the ready passage of water-borne debris into the river.

In 1950 Hilo Sugar Company changed from hand harvesting to mechanical harvesting. Under the former method the roots and stub of the cane plant were left in the ground. It was testified that this retarded the flow of surface water from the field. With mechanical harvesting the whole cane plant is uprooted and the ground is left bare. As a result of the change in harvesting methods, the volume of surface water runoff from a harvested field onto Amauulu Road was thereafter greatly increased. There is testimony that considerable trash might be dropped onto the road from trucks hauling cane to the mill. On occasion of very heavy rains some of the trash would be carried in the running water to the bridges. The original drains on the north end of the two bridges were flush with the street level and were covered by gratings. The tendency of the old type of drain was to clog with such trash and other debris and when that occurred water flowing down Wainaku Street and down Puueo Street crossed over the bridges instead of being dumped into the river. This inability of the old drains to carry off and discharge the waters reaching the bridges into the river was undoubtedly the primary cause of the flooding of the building on the prior occasions. It is established by the evidence with certainty that without such deficiency in

the drains the basement of plaintiff's store would not have been flooded on August 30, 1957. And the evidence also is that the deficiency could have been remedied if the engineer's recommendation to replace the bridge drains had been followed. In 1954 there was a recurrence of what happened from the heavy rain of 1950. It was not until March 1958 that the county installed the recommended type of catch basin on the bridges.

There is no question but that the damage to plaintiff's goods was caused by surface waters which had been diverted from their natural course and destination by the two bridges. In the course of its decision, the trial court stated in that connection:

"In constructing the bridges in question over the Wailuku River, the County removed the natural barrier which separated surface water on the Amauulu-Wainaku section of the City of Hilo from that of the main section of the City, and permitted surface water from areas across the river to flow onto the Plaintiff's property, which would not otherwise have flowed in that direction, and placed an additional and unreasonable burden on the Plaintiff, and for which it should by law be protected. By removing the natural barrier, the County diverted the natural flow of water, and for the damages resulting therefrom it should respond in damages."

It is first contended by appellee that under the ruling of *Hamilton v. County of Hawaii*, 40 Haw. 193, this diversion by the county of surface waters onto plaintiff's property which would not have otherwise flowed there rendered the county liable for the damages caused thereby.[3] Appellant's position on the point is that the general rule fol-

[3] *Carter v. Hawaii County*, 47 Haw. 68, 384 P.2d 308, which was decided after submission of this case, also deals with the issue involved in the *Hamilton* case.

lowed in the *Hamilton* case is not applicable here for the contended reason that a municipality is not liable for damages caused by diversion of surface waters by a public storm drainage system as a result of either insufficient capacity in its original design or such inadequacy as may develop from increase of surface flow with the passage of time. In effect, the argument is that as a municipality is not required to construct any drainage system it therefore should not be held responsible for constructing or maintaining one lacking sufficient capacity since any system, however inadequate, is better than none. Another contention of the county is that a municipality may not be held liable for damages caused by diversion of surface waters resulting from the construction of highways. Authorities from other jurisdictions have been cited pro and con on the two propositions. We have considered the authorities but have concluded there is no necessity of reviewing them or of attempting to resolve whatever conflict there may be between those offered by appellant and those offered by appellee since we believe the latter is correct in contending that the ruling in *Cabral* v. *City and County*, 32 Haw. 872, is applicable to and dispositive of the issue of liability for the type of diversion presented by the facts of this case.

In the *Cabral* case the City and County of Honolulu was held liable for damages caused to property adjacent to the Waiolani Stream by water which backed up from the bridge over the stream at Wyllie Street by reason of the fact that the culvert under the bridge was not large enough to take the volume of flow during a freshet in 1930. The culvert originally was adequate even during the heaviest rains to permit the full flow of the stream to pass under the bridge. It became inadequate in that respect because of the increase of flow in the stream caused by the dumping of additional surface waters into it as a con-

sequence of the development of the surrounding area. During heavy rains the inadequacy of the culvert caused the bridge to act as a dam and divert water onto property abutting the stream above the bridge. The city and county had become aware of the situation from a flood in 1927. In holding the municipality liable for damages caused by the 1930 flood the court stated, at p. 879:

"* * * In *Reinhardt* v. *County of Maui*, 23 Haw. 102, the action was for negligence for failure to rebuild or repair a culvert (in a public highway) which had been washed away and destroyed. This court, referring to *Matsumura* v. *County of Hawaii*, 19 Haw. 18 and 496, and *Halawa Plantation* v. *County of Hawaii*, 22 Haw. 753, said, at page 106, that 'those cases are to be regarded as having established in this jurisdiction the rule that the liability of counties with respect to the repair and, therefore, the non-repair of highways is governed by the law applicable to municipal corporations, and that counties do not enjoy the immunity accorded to quasi-corporations'; and that there is no difference in principle between the two earlier cases in which the injuries were caused to private property by the negligence of the employees of the county in making repairs to a highway and the case then at bar in which the alleged negligence consisted in a failure to keep the highway in a reasonably safe condition (p. 105). So, also, there is no difference in principle between the failure to erect a new culvert in place of one that has been washed away and the failure to erect a new culvert or bridge in place of one that has proven inadequate. If in the one instance of nonfeasance the county is liable, so also, it must be liable in the other instance of nonfeasance."

While it is obvious that there are distinguishing features between the facts of the *Cabral* case and those of

this case, there is no rational basis for holding that the underlying principle of the *Cabral* case is not applicable here. In each case the defect in the bridge causing the damage complained of was an inadequacy of construction which obstructed and prevented surface waters from flowing naturally in a watercourse. The fact that in one case the defect caused the bridge to act as a dam and in the other as a flume is a distinction which we see as of no significance. In our opinion the defendant's failure, after notice in 1950, to remedy the defect in the drains at the two bridges was nonfeasance comparable to that for which the city and county was held liable in the *Cabral* case.

In its brief appellant further urges, with little elaboration, that, "This case simply shows an overflow of water from existing drainways caused by a third party clogging the system and of surface water running off the public streets precipitated by an unusual rainfall"; and, that "where, as in this case, the existing drainage system proves inadequate because of the acts of third parties in causing the system to be clogged, the runoff and overflow is attributable not to the inadequate drainage system, but rather to the acts of the third party." We find no merit in the argument.

In referring to and explaining an illustration he had made on the blackboard of the old type grate-covered drain, William Upchurch, the county's superintendent of highway maintenance, testified, "And we have quite a difficulty with this because every time a little rubbish gets on this, it gets clogged and the water just seeped over."[4] He admitted that with heavy rains, such as occurred in 1950 and 1954, it would not have made any difference whether the drains were clogged or not "because they're just not

---

[4] While no explanation was offered for or noted in the record it can be taken from related testimony that the second "this" in Mr. Upchurch's quoted testimony referred to the grate covering of the old type of drain.

sufficient to carry the water out." From the evidence in the case the negligence of Hilo Sugar Company, if any, in the respect contended would only be concurring. Whatever the dereliction of the plantation the county's failure, after 1950 at least, to replace the inadequate drains at the bridges contributed substantially and proximately to produce the injury to plaintiff as it is clear that but for the county's nonfeasance in that respect surface water from the Amauulu-Puueo section would not have flowed to the other side of the river. Therefore, attributing negligence to the plantation for strewing cane trash on the roadway, or for any other cause, would not relieve the county from liability. See *Greenwood* v. *Evergreen Mines Co.,* 220 Minn. 296, 19 N.W.2d 726; *City of Aurora* v. *Reed,* 57 Ill. 29; *City of Tucson* v. *Koerber,* 82 Ariz. 347, 313 P.2d 411; *Ryder* v. *Town of Lexington,* 303 Mass. 281, 21 N.E.2d 382; 63 C.J.S., *Municipal Corporations,* §§ 840, 842, pp. 182, 184.

As the grounds for contending that the plaintiff was contributorily negligent, the county alleged in its answer that the holes in the sidewalk were "so negligently and carelessly constructed and maintained by the plaintiff, F. Koehnen, Ltd., that surface water flowed through the holes and into the basement of said premises." In the third-party complaint, the negligent act of the contractor is alleged to have been that, in making an opening in the wall of the building, it "dug or made a hole in the sidewalk on said avenue alongside the said F. Koehnen, Ltd., building." Consistently with this allegation the county has attempted to maintain that the hole made by the contractor was in the sidewalk. However, photographs in evidence fully substantiate plaintiff's version that the hole made by the contractor for the purpose of constructing a ramp into the basement was in the floor of the building and did not to any extent encroach on the sidewalk area.

The openings in the sidewalk had been there for many years before plaintiff acquired the building. One of them was for a delivery ramp. The others were for ventilation. All were adequately covered. Nothing in the evidence tends to show that maintenance of any of the openings in the sidewalk was in any respect improper or illegal. On argument appellee conceded "they were authorized." There is accordingly no support in the evidence for the defense of contributory negligence as pleaded. However, in the trial of the case the contributory negligence defense was presented and considered (without amendment but also without objection) on the theory that plaintiff's negligence consisted in its failure to store the merchandise it placed in the basement above the floor level in accordance with the practice American Factors had followed. The modified theory of contributory negligence rested on the premise that the plaintiff knew or should have known that the basement was subject to flooding during or from heavy rains. Proof of such knowledge was essential to the defense.

The intersection of Shipman Street and Kamehameha Avenue is almost the lowest spot in Hilo and the elevation of the basement floor of the Koehnen Building is approximately that of high tide level in nearby Hilo Bay. To prevent seepage of sea water into the basement at high tide, American Factors installed two pumps which, as necessitated and activated by tidal action, automatically draw water from a sump connected to a network of pipes under the basement floor and discharge the water into the city's drainage system. Plaintiff's officers observed and were told about the pumps when they inspected the building prior to purchasing it. At that time they also observed some wooden sawhorses stored in one corner of the basement.

The defendant contended and the trial court concluded

that the plaintiff should have anticipated danger of the basement flooding because it knew of the installation of the pumps and of the presence in the basement of material for platforms. However, the court denied the plea of contributory negligence.

The trial court first held that the defense of contributory negligence could be disposed of by the principle enunciated in *Cabral* v. *City and County, supra*, 32 Haw. 872, at pp. 880-882, as follows:

"* * * Assuming that these claimants (other than Blake) knew, as they doubtless did, when they erected or purchased their houses that because of the inadequacy of the culvert injury was likely to occur to buildings standing at those points, nevertheless the burden of the loss cannot in law be placed upon them. They had a right to rely upon the view that the defendant would remedy the defects in the structure across the stream at Wyllie Street, as by substituting therefor an adequate bridge. * * * To hold that the defendant could, without liability to the property owners, erect or maintain at that point a culvert so inadequate as to necessarily cause damage to property owners in times of freshets and thus effectually prevent them from using their property in a way that would have been safe and lawful prior to the erection of the culvert, would be in its essence to deprive the owners of the right to use their property without compensating them therefor. This would contravene the principle that private property cannot be taken for public use without just compensation."

The trial court further held that it was immaterial whether plaintiff knew or should have known that surface water might flood the basement, since, the court concluded, even if plaintiff had followed American Factors' practice of storing merchandise on platforms 14 to 18

342

inches above the basement floor, it still would have suffered damage, because the undisputed testimony showed that the water was 3 feet high in the basement on the evening in question.

It is our view that the issue may be readily disposed of on the ground that the proof does not permit a finding that plaintiff was aware or should have been aware that the building was subject to flooding by surface water.

There is no evidence that the plaintiff had actual knowledge before August 30, 1957, that the building had ever been flooded or that the area in the vicinity of the building was subject to flooding by the excessive accumulation of surface water. Nor do we think the evidence warrants imputing such knowledge to the plaintiff.

The managing officers of the plaintiff, Fred J. Koehnen, President, and Carl E. Rohner, Vice President, were called as witnesses. They had negotiated the purchase of the building from American Factors. Defendant relies almost entirely on the testimony of these two witnesses in its effort to prove that plaintiff had or should have had knowledge that the building was subject to flooding, yet each of the officers explicitly denied personal knowledge of any previous flooding of the building or of the area in its vicinity. They likewise denied that they were given any information to that effect in the course of negotiating for the purchase of the building. They also testified they were not told of American Factors' practice of storing merchandise in the basement on tables. One of the officers said that in response to an inquiry as to whether any trouble had ever been experienced from rain water coming into the basement from the outside, the seller's representative had replied that formerly water did on occasion seep through one of the basement walls but the wall had been sealed and the problem eliminated. The county offered nothing to rebut this affirmative testimony on lack

of actual knowledge on the part of plaintiff.

The testimony of the officers relative to the two pumps was that they were only told that the necessity for and purpose of the pumps was to take care of seepage from tidal flow under the basement and that the pumps performed their function automatically and efficiently. This testimony also remained uncontradicted. On this state of the record, it is futile for the county to argue that knowledge of the existence of the pumps gave plaintiff warning or notice that it could expect the basement to occasionally be flooded by surface water. Similarly the contention that plaintiff's officers should have seen a danger signal and warning from the presence of the sawhorses in the basement rests on conjecture supported only by pyramiding inference on inference. The deduction urged from the evidence relied on is too speculative to have probative force.

The burden of proving contributory negligence was on the defendant. *Anduha* v. *County of Maui,* 30 Haw. 44, 50; *Grace* v. *Kumalaa,* 47 Haw. 281, 287, 386 P.2d 872, 877. It is our opinion that the county fell far short of sustaining its burden of proving the requisite element of knowledge on the part of plaintiff. It is not necessary therefore to pursue the issue any further in order to sustain the trial court's ruling against the county on the contributory negligence defense.

The judgment is affirmed.

*Mamoru Shimokusu,* Deputy County Attorney of Hawaii County (*Yoshito Tanaka,* County Attorney), for appellant.

*James W. Boyle* (*Carlsmith, Carlsmith, Wichman & Case* of counsel), for appellee.